## Evans *et al.* *versus* Waln *et al.*, Executors.

1. Waln employed Markoe, a broker in Philadelphia, to sell stock; Evans, a broker in New York, sold the stock by order of Wister, another Philadelphia broker under Markoe, with assent of Waln, without naming the owner; before the proceeds were remitted by Evans, Wister failed, in debt to Evans. *Held*, that Evans could not retain the debt from the proceeds.

2. After Wister's failure Evans asked Markoe to send certificates and he would remit to Markoe less Wister's debt; Markoe answered, the stock was a customer's; Evans answered, send stock in any event, " will give you net balance to-morrow." Markoe sent the stock. *Held*, that "net balance" meant proceeds after deducting expenses of sale.

3. Evidence that it was the custom of brokers, in their dealings with brokers of other cities, to put all transactions between them into one account and settle for the general balance, was inadmissible.

4. Such custom would not have authorized defendants to credit Wister's account with the proceeds of the stock.

5. The action for the amount retained by Evans, was properly brought in the name of Waln.

6. An action for the proceeds of property sold by one agent by orders of another can be maintained by the owner against seller.

February 15th 1872.    Before AGNEW, SHARSWOOD and WILLIAMS, JJ.    THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 119, to July Term 1871.  This was an action of assumpsit, brought March 27th 1871, by Edward Waln and others, executors, &c., of S. Morris Waln, deceased, against Manlius G. Evans and others, trading as Evans, Wharton & Co.

The plaintiffs being owners of 2033 shares of Columbus, Chicago and Indiana Central Railroad stock, employed Markoe & Brother, brokers in Philadelphia, to sell them.  The stock was sold by the defendants, brokers in New York, through the agency of Frank Wister, another broker in Philadelphia.  Wister failed, in debt to the defendants whilst the proceeds of the sale of the stock were in their hands, in remitting the proceeds, they withheld the amount of his indebtedness.

The suit was brought to recover this amount.  The case was tried May 31st 1871, before Stroud, J.

Wister testified that he had been employed to sell the 2033 shares of stock, which belonged to the estate of S. Morris Waln, deceased, his instructions were from Markoe & Brother, he sent the order to the defendants by the following telegrams : ·   .

"Philadelphia, March 7th 1871.

E. W. & Co. :

Sell five C. C. & I. C.—best seller there—don't press—have a lot for sale—can be shipped to-day if absolutely necessary.

WISTER."

[Evans *v.* Waln.]

"Philadelphia, March 8th 1871.

Evans, W. & Co.:

Work off fifteen hundred and thirty-three at best. Don't hurry, and quote C. C. & I. C. income bonds.

WISTER."

In pursuance of these, the stock was sold by the defendants; the certificates had never been in his possession; Markoe & Brother attended to the rest of the business: he informed defendants in a conversation previously, that he thought he would have the sale of the stocks, and that it belonged to the estate of Mr. Waln. He did business with defendants on his own account, as well as for his customers. On cross-examination he testified, "It is the custom for a broker who is employed to sell stock, to receive the proceeds thereof and pay the principal. I could not say what the custom is between brokers of different cities. It is not uniform."

The following questions were put to the witness, they were objected to by the plaintiffs, rejected by the court, and several bills of exception sealed.

"At the time these orders were given were you not indebted to the firm of Evans, Wharton & Co ?"

"Was it not your custom in dealing with Evans, Wharton & Co., to keep one account of all your transactions ?"

The counsel for the defendants on being asked, said that he did not intend to follow the question by showing that the plaintiffs were acquainted with such custom.

Waln, one of the plaintiffs, testified that he gave Markoe & Brother the order to sell the stock and suggested that it would be agreeable to witness, if they would share the commissions with Wister; he understood Wister was associated with them in effecting the sale: the stock was not saleable in Philadelphia. Markoe & Brother returned to the plaintiffs account sales as having been made in New York: he knew stock had been sold through the defendants. He did not see Wister in the transaction; the plaintiff never communicated directly with the defendants; he first heard of Wister's failure about the closing of this transaction.

John Markoe, of the firm of Markoe & Brother, testified, that the firm was employed to sell the stock. Mr. Waln knew the condition of the Philadelphia market and instructed them to sell it, he knew through whom they would sell it; it was sold by the defendants; the stock brought $42,621.22; Markoe & Brother received $41,491.99 from defendants, leaving due $1129.23; the orders to sell the stock were given in the name of Markoe & Brother. Witness said: "When stock is sold regular it is generally deliverable the next day."

The defendants asked witness as follows: "When stock is sold regular and not delivered the next day, is not the broker to whom

[Evans *v.* Waln.]

the stock is sold obliged to borrow stock in order to fill his contract with his principal ?''　The plaintiffs objected to the question, it was rejected by the court and a bill of exceptions sealed.

The plaintiffs then gave in evidence seven telegrams dated March 7th and 8th 1871, from the defendants to Wister ; two of them respectively informed him of the sales of " 300 C. C. & I. C." and " 200 C. C. & I. C."

The defendants then gave in evidence the following telegrams :

Phila., March 9th 1871.

C. Evans, care Evans, Wharton & Co. :

I have stopped.　I owe Treichel ten Reading at two.　Deliver these, if you have enough to make you whole.　Keep the Erie, if you can ; but I don't want you to suffer.　The Columbus will be shipped by Markoe.

Answer to this main office.　　　　　　　　　　WISTER.

Phila., March 9th 1871.

Evans, Wharton & Co. :

Notification by letter reports sale of only nineteen hundred and thirty-three shares (by wire yesterday, two thousand and thirty-three shares).　Suppose latter is correct.　Have shipped stock to-day.　Remit to us.

MARKOE & BRO.

Phila., March 9th 1871.

Evans, Wharton & Co. :

Have had no answer to our despatch.

MARKOE & BRO.

N. Y., March 9th 1871.

Markoe & Bro. :

We sold one hundred to Marx Co. at West, and omitted to notify by mail.　Do you want the entries to go into your account, or into Frank's ?　What are his liabilities?

E., W. & Co.

Phila., March 9th 1871.

E., W. & Co. :

Our account.　We ship all the stock to-day.　Advise us that you remit.　Don't know poor F.'s liabilities.

MARKOE & BRO.

N. Y., March 9th 1871.

Markoe & Bro. :

Our friend owes us about six hundred.　If you will ship the C. C. & I. C., we will remit (less that amount) to-day.　If not, we must buy in sufficient stock to protect us.　Answer quickly.

E., W. & Co.

[Evans *v.* Waln.]

Phila., March 9th 1871.

E. W. & Co.:

Do not think it ought to be included. I have the stock ready for shipment.

MARKOE.

N. Y., March 9th 1871.

Markoe & Bro.:

Please answer our first despatch, do not delay as you are removing our chance of protection.

E., W. & Co.

Phila., March 9th 1871.

E., W. & Co.:

You have asked for *whose* account and have been answered. The stock was sold for account of customer of ours.

MARKOE & BROTHER.

N. Y., March 9th 1871.

Markoe & Bro.:

Please send order to cover.          E., W. & Co.

Phila., March 9th 1871.

E., W. & Co.:

Do not cover. We are ready to deliver.

MARKOE & BRO.

N. Y., March 9th 1871.

Markoe & Bro:

Do not fail to ship stock to-night, in any event, as it is very scarce. We will give you net balance to-morrow in Philadelphia.

E., W. & Co.

March 9th 1871.

E., W. & Co.:

All right, as far as shipment is concerned you could have had it before.          MARKOE & BRO.

The defendants proposed to prove by Robert Glendenning, a broker, that it is the custom of stockbrokers when dealing with stockbrokers in other cities, to put all the transactions between them into one account, and to remit or draw for the general balance. This was objected to by the plaintiffs, unless to be followed by evidence that it was known to the plaintiffs, and the defendants' counsel saying he did not so purpose, the court rejected the offer, and sealed a bill of exceptions.

Cadwalader Evans, one of the defendants, testified that the defendants had not been informed when the orders were given, that the Markoes had anything to do with the transaction, except as friends of Wister.

The plaintiffs in rebuttal gave in evidence three telegrams from

[Evans *v.* Waln.]

Markoes to defendants and as many answers from defendants, all of March 7th and 8th 1871, and all relating to "C. C. & I. C." stock.

The defendants submitted the following points, which the court declined to answer :—

4. If the jury believe from the evidence that F. Wister was unable to or did not fulfil his promise to deliver the said stock to the defendants on the ninth day of March 1871, then the defendants were not obliged to accept the subsequent delivery of said stock by Markoe & Brother, except upon such terms as they the defendants chose to agree to.

5. If the jury believe from the evidence that the defendants did not accept the delivery of stock by Messrs. Markoe & Brother, as the fulfilment of F. Wister's contract, except upon the condition that the indebtedness of the said F. Wister to the said defendants was to be deducted from the proceeds of the sale of the said stock, the verdict must be for the defendants.

6. If the jury believe from the evidence that the defendants were employed as sub-agents for the sale of the said stock by Francis Wister, then they are accountable only to the said Wister and not to the plaintiffs, and the verdict must be for the defendants.

The court charged the jury as follows :—

"If you find from the evidence that the stock sold by the defendants belonged to the plaintiffs, as the executors of S. Morris Waln, and the ownership was known to the defendants, that the order to sell the stock was given by Colonel Wister, that the defendants knew that he was a stockbroker, the plaintiffs are entitled to the proceeds of the sale of this stock, after deducting the commissions of the defendants for making the sale, and that the plaintiffs are entitled to the balance claimed."

The verdict was for the plaintiffs for $1144.48.

The defendants took out a writ of error and assigned for error the rejection of their offers of evidence and declining to answer the points.

*G. T. Bispham*, for plaintiffs in error.—Evidence of the custom of brokers under the circumstances of this case was admissible : Coles *v.* Bristowe, Law Rep. 4 Ch. App. 3 ; Maxted *v.* Paine, Id. 6 Exch. 132 ; Duncan *v.* Hill, Id. 255. The action could be maintained against defendants only the name of Wister : Stephens *v.* Badcock, 3 B. & Ad. 354 ; Sims *v.* Brittain, 4 Id. 375 ; Ireland *v.* Thomson, 4 C. B. 149 ; Addison on Contracts 587.

*J. E. Gowen* (with whom was *A. D. Campbell*), for defendants in error.—The defendants could not be themselves the purchasers, while acting as agents for the sale: Story on Agency, §§ 9, 211 ;

[Evans *v.* Waln.]

Tetley *v.* Shand, L. T. 25, C. P. xxv., N. S. 658. Even had
they been purchasers of the stock from Wister, they could not
have set off the debt in an action by the principal: Dunn *v.*
Wright, 51 Barb. (N. Y. S. C.) 244; Fish *v.* Kempton, 7 M. G.
& S. (62 E. C. L. R.) 687; Sweeting *v.* Pearce, 7 C. B. N. S. (97
E. C. L. R.) 449; Wigglesworth *v.* Dallison, 1 Sm. Lead. Cas.
Part II., 687; Shaw *v.* Spencer, 100 Mass. 382; Markham *v.*
Jaudon, 2 Hand. (41 N. Y. Court of App.) 235; Day *v.* Holmes,
103 Mass. 206; Coxe *v.* Heisley, 7 Harris 243. Assumpsit lies
where the defendant has money of the plaintiff's which, *ex æquo et
bono*, he ought to refund: Nash *v.* Towne, 5 Wallace 689; Gilpin
*v.* Howell, 5 Barr 41; Taintor *v.* Prendergast, 3 Hill (N. Y.) 72;
Parker *v.* Donaldson, 2 W. & S. 9; Reeside *v.* Reeside, 13 Wright
322. It is really only an attempt to *set off* the debt due by
Wister, which they are not entitled to do: Pratt *v.* Willey, 2 C. &
P. 350 (12 E. C. L. R. 164); Grant *v.* Seitsinger, 2 Penna. R.
525; McNair *v.* McLennan, 12 Harris 384; George *v.* Clagett
(7 T. R. 359), 2 Smith's Lead. Cas. 197 (*185); Sheffer *v.*
Montgomery, 15 P. F. Smith 329; Bousfield *v.* Wilson, 16 M. &
W. 188.

The opinion of the court was delivered, July 3d 1872, by

WILLIAMS, J.—There is no evidence that the defendants ac-
cepted the delivery of the stock by Markoe & Brother, on the con-
dition that Wister's indebtedness to them should be deducted from
the proceeds of sale. No such agreement or understanding can
be fairly inferred from the language of the despatch, in pursuance
of which the stock was delivered, or from the previous communi-
cations between the parties. On the contrary, the whole corres-
pondence shows that the stock was delivered without any such con-
dition, on the defendants' promise to pay over the net balance of
the proceeds of sale. No other interpretation can be given to
the words: "We will give you net balance to-morrow in Philadel-
phia." As applied to the proceeds of the sale of stock, the phrase
"net balance" means, in commercial usage, the balance of the pro-
ceeds after deducting the expenses incident to the sale. And
without doubt it was understood in this sense by Markoe & Brother,
and the defendants intended that it should be. If the order for
the delivery of the stock had been addressed to Wister there might
be some ground for the contention that by "net balance" the de-
fendants meant the balance of his account after crediting the pro-
ceeds of the stock. But as it was addressed to Markoe & Brother,
how, in the face of their refusal to allow the defendants to retain
Wister's indebtedness out of the proceeds of sale, can it be se-
riously urged that the defendants meant the net balance of the
proceeds after deducting his indebtedness? There is nothing in
the language or in the attendant circumstances to warrant any such

interpretation of the defendants' promise. It is clear that the stock was delivered to them with the understanding that they would pay over the net proceeds of sale in accordance with its plain meaning. And if so, the court below was clearly right in refusing to affirm the defendants' fourth and fifth points. However correct in the abstract, there was nothing in the evidence to which they were applicable.

Nor was there any error in rejecting the offer to show that it is the custom of stockbrokers, when dealing with stockbrokers in other cities, to put all the transactions between them into one account, and to remit or draw for the general balance. Such a custom, if proved, would have constituted no defence to the plaintiff's action. Admitting its existence, the defendants had no right to credit Wister's account with the proceeds of the stock. He was not the owner of it, and he had no title or claim to its proceeds. The defendants did not receive the stock from him, and they were not bound to account to him for the price for which it was sold. Besides it does not appear that they did credit him with the proceeds, and no offer was made to show that any such credit was given. It is clear then, that whether the custom was known to the plaintiffs or not, this case is not within its operation. And if so, evidence of its existence would not help the defendants, and was, therefore, rightly rejected. But if the defendants had received the stock from Wister—knowing as they did that it belonged to the plaintiffs—they would have had no right to apply the proceeds arising from its sale to the payment of Wister's indebtedness. If there is a custom among stockbrokers, when dealing with others, to appropriate money belonging to the principal to the payment of his broker's indebtedness, the sooner it is abolished the better: *Malus usus est abolendus.* A custom so iniquitous can never obtain the force or sanction of law, and the marvel is that it should be set up as a defence to this action.

The only question which remains to be considered—if question it can be called—is whether Wister or the plaintiffs are entitled to maintain the action. If the right of action follows the title to the proceeds of the stock there can be no doubt that the action is properly brought by the plaintiffs. They were the owners of the stock, and as such, entitled to its proceeds, and as they have not parted with their right to demand and receive them, there can be no question as to their right to maintain the action. It is wholly immaterial that the stock was sold on the orders of Wister, if, as we have seen, the defendants were not bound to account to him for the proceeds, and he had no right to demand and receive them. Without such right it is clear that he has no title to maintain the action. The authorities cited by the counsel for the plaintiffs in error have no application to this case; and if they had, it is not the law of Pennsylvania that the owner of property, which has

[Evans *v.* Waln.]

been sold by one agent on the orders of another, cannot maintain an action against the seller for the proceeds of sale which he has received and unjustly withholds. The other assignments were abandoned on the argument and need not be noticed.

Judgment affirmed.